BROADWATER ET AL., respondents. v. RICHARDS, ADM'R, appellant.

APPEAL — *Motion for new trial necessary to examination of questions of fact.*— When there was no motion for a new trial in the court below, the appellate court will not consider the evidence contained in the record on questions of fact. *Largey* v. *Sedman,* 3 Mont. 472, reaffirmed.

APPEAL FROM PROBATE TO DISTRICT COURT — *Powers of latter on such appeal.*— The district court being the appellate court of the probate court (see sec. 432 of Code of Civil Procedure), and having general jurisdiction, has the inherent power and authority to make any order in a case properly before it that the probate court could itself make.

*Appeal from First District, Custer County.*

THE briefs in this case and the one following seem to have been prepared as if for one case.

FIRST APPEAL.

H. N. BLAKE, for appellant.

In addition to the points and authorities on file in this cause, and insisting thereon, the following matters are presented for the consideration of the court:

This is an appeal from the judgment of the district court, pages 163, 164, of the transcript, setting aside a certain sale of property by the appellant, and making further orders in the premises.

1. The court below should have dismissed the appeal of respondents from the order of the probate court for all of the grounds therein stated. The appeal was taken by respondents from an order confirming, approving and

declaring valid a sale of certain property of the estate of Brooks, deceased. The only appeal allowed by the statute is under the fourth clause of sec. 432, Code Civil Procedure, which is as follows: "From an order directing the sale or conveyance of *real* property."

All the papers in the case fail to speak of any real property belonging to the estate of Brooks. No order has been made by the probate court concerning the sale of any real property by the appellant, and all he sold was personal property. The papers refer to a log building, which of itself is personal property. This court must take judicial notice of the fact that the land on which said building is situated is a part of the public domain that has been granted to the Northern Pacific Railroad corporation; and that the officers of the land department in Washington refused the application of the probate judge of Custer county, Montana, to enter Miles City under the town site acts of congress and this territory. A building, so owned by one party and situated on the public domain, can be removed by a person possessing the building, and is personal property, and there can be no question that such was the *status* of this log structure when the appellant sold it. *Antvine* v. *Belknap,* 102 Mass. 193; 2 Kent. Com. 12th ed. (445), 343, n. 1 and cases there cited; *Brown* v. *Sullie,* 6 Nev. 244; *Prescott* v. *Wells,* 3 Nev. 90; *Pennybecker* v. *McDougal,* 48 Cal. 160; *Hinckley* v. *Baxter,* 13 Allen, 139.

The statute of California, from which the Montana Probate Practice Act has been borrowed, defines the words "real property" to be "co-extensive with lands, tenements and hereditaments." Code Civ. Proc. sec. 17. The statutes of Montana say, "the words 'land or lands' and the words 'real estate' shall be construed to include lands, tenements and hereditaments, and all rights thereto and all interests therein." Cod. Stats. 389, sec. 1, clause 5. It will be seen from these definitions that the log structure referred to is not real estate.

2. Appeals are purely rights conferred by statute, and where the law grants none, a party has none. If the Probate Practice Act mentions appealable orders, all others are excluded. *Deer Lodge Co.* v. *Kohrs*, 2 Mont. 66; *In the Matter of Smith*, 51 Cal. 563 ; *Estate of Dunne*, 53 Cal. 631; *Blum* v. *Brownstone*, 50 Cal. 293; *Johnson* v. *Tyson*, 45 Cal. 257.

3. The order of the probate court, from which the appeal was taken, confirmed and approved a sale of personal property by the administrator. Transcript, 48.

No appeal was ever taken from the order authorizing the sale by the administrator. Transcript, 98. Yet the court below not only set aside this order, but directed the administrator to qualify and administer thereafter, and give notice, and allow parties to present their claims for allowance, etc. This action was erroneous. The court had no jurisdiction of any of these matters in this appeal. The order appealed from did not relate to these questions. Judgment, transcript, 163.

4. The order for the sale of the property by the administrator was binding until reversed. It was never appealed from and could not be legally set aside. *Estate of William Stott*, 52 Cal. 406; *Estate of Thos. Spriggs*, 20 Cal. 121; *Halleck* v. *Moss*, 22 Cal. 266; *Vantilburg* v. *Black*, 3 Mont. 459; *Garwood* v. *Garwood*, 29 Cal. 514.

5. Through no fault of appellant, and against his protest, the respondents have appeared in court without pleadings and submitted no issues. Appellant contends that all the evidence shows that the probate court could not reasonably and legally do any act, except confirm the sale by appellant. There is no conflict of testimony relating to the sole question before the court. The probate law has been complied with by the appellant.

6. The firm of Broadwater, Hubbell & Co. and George M. Miles were not creditors or heirs of the estate of Brooks, and could not control the acts of the administrator in making said sale. They were not interested in

the estate. The court below erred in refusing to sustain the motion of appellant to strike from the files the objections of these parties. *Garwood* v. *Garwood,* 29 Cal. 514.

7. The court below erred in sustaining the objections of respondents to certain questions propounded by appellant tending to show that certain records and papers of the probate court of Custer county had been lost, and the contents thereof. Those questions appear in the transcript, pp. 19, 20. The existence of a record showing the regularity of probate court proceedings may be shown by secondary evidence, if the original has been lost or destroyed. *Will of Warfield,* 22 Cal. 51–64; *Jackson* v. *Crawford,* 12 Wend. 533; *Ames* v. *Hoy,* 12 Cal. 11; 1 Greenl. Ev. sec. 509; Code Civ. Proc. sec. 609.

8. The court below erred in excluding the evidence tending to show that George M. Miles had no interest in the estate of Brooks. Transcript, 21, 22. If Miles had no interest in the estate as heir, creditor or otherwise, he could not be a party to these proceedings, and should be dismissed therefrom. The evidence offered showed conclusively that Miles had no interest in the estate.

9. The respondents claim that there was no probate court of Custer county at the times that some events in the history of this cause occurred. Appellant filed his application for the letters of administration January 7, 1879, and they were issued January 18, 1879. This court will take judicial notice of the action of the executive of this territory in organizing the county of Custer several months before the death of Brooks. There had been, in fact, a probate court of said county during these times, and a judge thereof. These acts of the executive were approved, as well as the acts of the officers of said county, by the legislative assembly. Statutes 11th Session, pp. 117, 100, which went into effect, respectively, January 21, 1879, and February 8, 1879. Laws of this character have been held valid. Smith's St. and Const. Law, sec. 267; *State* v. *Stephens,* 21 Kans. 210; *Rumsey*

v. *People*, 19 N. Y. 41; *Thomson* v. *Lee County*, 3 Wall. 327; *Laramie Co.* v. *Albany Co.* 92 U. S. 307; Cooley's Const. Limit. 371 *et seq.* and 254; *Lamming* v. *Carpenter*, 20 N. Y. 447; *People* v. *Maynard*, 15 Mich. 470; *Kneeland* v. *Milwaukee*, 15 Wis. 454.

10. There are two statutes authorizing appeals from the probate court. The Code of Civil Procedure, sec. 432, allows appeals to be taken to the district court. The Probate Practice Act allows them to be taken to the supreme court. Sec. 324. Both acts were approved February 16, 1877, but go into effect on different dates. Both courts cannot have jurisdiction of this appeal. The organic act contemplates that the supreme court should exercise appellate jurisdiction. If the Probate Practice Act governs this case, then the respondents should have appealed from the probate court to this court, and the district court never had jurisdiction of these proceedings.

HIRAM BLAISDELL, also for appellant.

In this case James R Brooks died intestate about January 1, 1879, and Thomas Richards was appointed administrator of his estate by the probate court of Custer county. That said Richards made application for said appointment on the 7th day of January, 1879, and upon the 18th day of January, 1879, Richards received his appointment. His appointment and bond and oath appear of record. He has continued to discharge the duties of the trust until the May term of the Custer county district court for 1880, and since has acted in that capacity. In July, 1879, said Richards made application to said probate court for leave to sell certain property of said estate. The court appointed a time, gave notice of the hearing, and upon the hearing made an order of record for the sale of said property. Warner, one of these objectors, appeared at said hearing, but filed no written objections to the order being made, and the order, as made, stands unappealed from, and is in full force and effect. The admin-

istrator proceeded to sell said property under said order, and has reported his sale to the probate court for confirmation. He has also made a general report of all his doings in the premises to the probate court. The probate court appointed a time for the hearing of these reports, and at these hearings these objectors appeared and made the objections which appear on file in both hearings. The probate court confirmed the sale of said property, and allowed the account and report of the administrator, and directed distribution of the estate to be made according to its decrees on file. From these orders of the probate court the objectors appealed to the district court of Custer county.

At the May term, 1880, sundry motions were filed by the administrator's counsel, which will be considered hereafter. They were each overruled. The order of the probate court confirming said sale, and approving the account of the administrator, and ordering distribution, was set aside as null and void, and the administrator ordered to file a new bond, and to proceed to the readministration of said estate. The court also ordered that, in case a new bond was not filed, new administration should be granted. One of the objectors, Warner, had presented his claim to the administrator, and had it allowed. Miles, one of the objectors, had done the same, and it was disallowed, and no suit had ever been commenced by him upon the same, and his claim had become barred by the statute.

Broadwater, Hubbell & Co. never presented their claim until after the time allowed by statute had passed; then, at the hearing before the probate court, in March, 1880, it was for the first time presented to the administrator for allowance. Before the administrator had time to pass upon the claim it was withdrawn. The administrator filed his motions in the district court to dismiss both appeals, which the court refused. We insist these motions should have been granted, as the district court

had no jurisdiction of the subject matter of said appeals. If an appeal is allowed to the district court from the probate court, from the latter's orders, it must be by virtue of the statute only. None of the sections of the statute allow this appeal. See Code of 1877, p. 150, sec. 408; id. p. 158, sec. 432; id. p. 324.

These proceedings in the probate court were not judgments, and this is not a civil action. The probate court could only make an order, which it did, and from that order no appeal would lie to the district court. There were, indeed, no pleadings upon either side; no verification of facts and nothing upon which the court could render a judgment. No issue had been framed in the probate court, out of which any possible decision could arise, which would be the subject of review in the district court. See *Deer Lodge County* v. *Kohrs*, 2 Mont. 66, 71. When this decision was rendered, the statute of appeals was the same as now in respect to such cases. It nowhere appears that Miles and Broadwater, Hubbell & Co. have any interest in this matter, or in said appeal. The statute only allows those having an interest in the subject matter of the litigation to appear before the courts, and the courts will always require an affirmative showing of that fact to appear before they allow a party to be heard. See Code of 1877, p. 251, sec. 46; id. p. 255, sec. 64; id. p. 289, sec. 188; id. p. 290, sec. 190; id. p. 294, sec. 202; id. p. 307, sec. 258. Broadwater, Hubbell & Co. are not interested. They have never, as yet, had a claim allowed or disallowed by the administrator or probate court. They never presented any for such allowance except that which was withdrawn. Code of 1877, p. 277, sec. 150; id. p. 280, sec. 155; id. p. 280, sec. 157. They must first put themselves upon a footing which entitles them to become litigants. As yet, we have no authoritative knowledge that they have got any claim unpaid and in full force which entitles them to step in and arrest the whole course of this administration and stop

the proceedings; and unless an entire stranger without
any interest can do this, Broadwater, Hubbell & Co.
certainly cannot.     There has yet been no adjudication
for or against their rights; they have simply their affi-
davit to a claim about which no one has any official
knowledge.     Their statutory time to present the same
has already passed, and they have no affidavit here bring-
ing them within the exception of creditors who have not
had an opportunity to prove their claims, that is, under
Code of 1877, page 277, sec. 150.     In fact the laws of
Montana absolutely place Broadwater, Hubbell & Co. be-
fore this court in a position where this nor any other
court can possibly recognize them as having a legal inter-
est in this estate; their claim is forever barred by the
limitation of law.     George M. Miles, another of these
objectors, is not in interest here.     No proof of his claim
was properly made to the administrator under section
154, page 279, of the laws of 1877.     His claim was there-
fore disallowed, as is shown by the note itself, on the 1st
day of April, 1879.

The records and files of this case fail to disclose that
George M. Miles has commenced any suit at all to recover
upon his claim since it was disallowed.     See secs. 155–6,
page 280, Code of 1877.     He therefore has made no show-
ing whatever which entitles him to be found here op-
posing and obstructing the course of administration on
this estate.     He has not, nor can he have, any possible
interest in this estate.     The statute of limitations has
barred his rights to be found here under any circum-
stances whatever.     Therefore this appeal should be dis-
missed as to the interest of Broadwater, Hubbell & Co.
and George M. Miles therein, or the motions designated
as Nos. 2, 3 and 4 granted.     Will the court presume, in
the absence of any proper affirmative showing, that
Broadwater, Hubbell & Co. and George M. Miles have an
interest shown here by this record which entitles them
to be heard either here or in the probate or district court

below ? The undertaking on appeal is insufficient which was given to remove the cause from the probate to the district court. See p. 158, sec. 432, Code of 1877; id. p. 159, sec. 438.

What are civil actions ? See Code of 1877, p. 54, sec. 66; *United States* v. *Ensign*, 2 Mont. 398. The probate court found the value of Brooks' interest to be:

In the community property...  ............................ $308 00
In the individual property................................ 138 00

Total amount in controversy........................... $446 00

The amount of the bond is $300 only, and the bond is not conditioned for the "prosecution of said appeals with effect," as required by the statute of appeals. The objections urged here do not come here, nor did they come to the courts below, properly authenticated. They are simply averments of facts, without any proof whatever of the truthfulness of the same, nor are they verified at all. The proceedings of the probate court and the administrator were supposed to be regular, and the burden of showing their irregularity was upon the objectors. They stopped the progress of administration upon certain grounds alleged in their objections. Upon these questions they held the affirmative of the issue, and they were lawfully bound to sustain their averments by competent proof introduced on their behalf, and by them, ere the court would demolish the actions of the administrator and require him to readminister upon the estate. The presumption is always in favor of the regularity of such proceedings, and not against them. Nevertheless, the district court rendered its judgment in the premises without any proof whatever on the part of the objectors in support of their objections.

The judgment was erroneously rendered. They have not sustained their objections by any competent legal proof. The receiving, filing and recording of the administrator's bond is sufficient evidence of its approval by the probate judge.

But, if the administrator's bond was insufficient, that does not render his acts unlawful. Third persons nor creditors cannot be supposed to look into the administrator's qualifications. The district court in effect decided that Richards was not administrator, but at the same time he went so far as to make an order for him to give a new bond. This the administrator was compelled to do to prevent paying over the moneys which have come to his hands, etc., under section 413, p. 151, Code of 1877.

The affidavit of George M. Miles proves nothing; no title to the lot in question is shown to have ever been vested in the town site company; no authority to the secretary or treasurer of said company to convey is shown; no conveyance is alleged, nor that the vendor ever placed Brooks in possession of the lot; nor that Brooks ever went into possession under and by virtue of the assumed purchase from Miles, as secretary and treasurer of the town site company. No evidence that Brooks owned or had any interest in the lot at the time of his death has been shown, or had possession even.

The question whether any real estate is involved in this estate can make no difference here. The estate of the intestate was less than $500, and, under section 2, pp. 35 and 36, laws of Montana for 1874, could be sold in the same manner as personal property

Jesse F. Warner is not in a position to raise these objections. Warner admitted the right of the administrator to act as such by presenting his claim to him for allowance as such administrator, which, in fact, all these objectors have done. Miles, as well as Broadwater, Hubbell & Co., all have admitted the right and jurisdiction of the administrator to act in the premises; and while it is true Broadwater, Hubbell & Co. withdrew their claim, yet, having once submitted it, they and the other objectors are estopped now from claiming that the administrator had no authority to act.

Again: In selling this property, the sale of which is

sought to be confirmed, the administrator acted under an order of the probate court of Custer county, granted for that purpose, and when challenged to show his right to sell, and ask for confirmation, he is not obliged to go back further than that order. To that he can safely point for his authority. Warner appeared at that hearing, and, for the purposes of this trial, "all the world appeared and were parties."

The probate court pronounced its order for the sale of the property. Everybody had notice; the sale has been made in conformity thereto; no one has appealed from that order, and it is yet in full force, and unreversed. It is not only binding upon Warner, one of these objectors, who appeared at its granting, but it is binding upon everybody, unless impeached for fraud.

"To the orders of the probate court, like intendments shall be given, and to its records, judgments and decrees there is accorded like force and effect and legal presumptions as to district courts." See 10th subdivision, sec. 1, page 240, Code of 1877.

No parties can go behind that order; there is no inspection behind its force as a decree, save by the appellate power, and that has not been exercised. See *McWitt* v. *Turner*, 16 Wall. 365–6; 15 Curtis' Decisions of U. S. Sup. Court, 125, entire opinion; 20 Wall. 246, 250; 5 N. Y. 497.

If Richards has acted as administrator in good faith, that is sufficient. Letters of administration have been granted him, and they are yet unrevoked. He has acted under them, and until they are revoked his acts are valid. Sec. 107, p. 264, Code of Montana, 1877.

Again: It nowhere affirmatively appears but that Thomas Richards may be the public administrator of the county. The court has a right to infer that he is; at least as long as two classes of administrators exist, either are liable to perform the duties of the office. The court will not infer that he is not, and if he is, his acts are

valid.   In *McWitt* v. *Turner*, 16 Wall. 363, the court ar-
bitrarily presumed the administrator in that case to be
the public administrator, although there was no affirma-
tive showing of that fact.   In all the cases cited the
courts very thoroughly examined all the proceedings of
the probate court, and based their decision upon the reg-
ularity of those proceedings.

As to officers *de facto*, see 20 Mich. 181, 182; 5 Wait's
Actions and Defenses, p. 7.

The district court in this cause has so far recognized
the administrator as to order him to give a fresh bond,
which he has done.   He has thereby acknowledged his
due inception into the office.

Not having the other assignments of error before me,
I am unable on my part to proceed further with this brief.

STREVELL & GARLOCK, for respondents.

Of the numerous errors, thirty-one in all, alleged by
the appellant in this case, it will not be necessary to con-
sider any except the first, second, third, fourth, fifth,
sixth, fifteenth, sixteenth, twenty-eighth, twenty-ninth,
thirtieth and thirty-first.   All the rest, as will appear
from the most hasty inspection of the record, are utterly
without foundation in fact.   They are in every instance
allegations that the court below erred in rulings which
the statement of the case, as settled and allowed, shows
were not made at all.   It does not appear that the ques-
tion referred to in the seventh of appellant's specifications
of error was ever asked upon the hearing had in the
court below, or that any ruling was had upon it either
adverse to the appellant or otherwise; nor do the ques-
tions referred to in appellant's specifications numbered
seventeenth to twenty-sixth, inclusive, appear to have
been asked at all; still less does it appear that there was any
adverse ruling upon them of which the appellant here
could complain; on the other hand, in specifications
eighth and ninth the errors complained of are that the
district court overruled questions put by appellants'

counsel, which the record shows were answered without objection.

It is at the same time assigned as error that the evidence offered by appellant and referred to in his specifications tenth to fourteenth, inclusive, was rejected on the hearing in the district court, while the record shows that it was in fact received without objection.

1. The appellant's first specification of error is to the effect that the district court erred in overruling his motion to dismiss the appeal of the respondents from the order of the probate court.

The general grounds upon which he relied in support of his motion were stated at length in his notice of motion as filed in the district court on April 2, 1880. See Transcript, p. 73. Exception having been taken to the decision of the court below in overruling the motion, it is to be considered whether any of the grounds assigned afford a sufficient reason why the appeal to the district court should have been dismissed, and the probate court allowed to proceed with the administration of the estate.

The first ground assigned was that the district court had no jurisdiction of the subject matter of the appeal. If by this it be meant that the district court has no jurisdiction in any case to review on appeal an order of the probate court of the character in question, then we submit that the objection that it has no jurisdiction of the subject matter of this appeal is entirely without foundation, for *in all cases* an appeal may be taken from any order of the probate court to the district court. Rev. Stats. U. S. sec. 1934.

No special provision is made by the Probate Practice Act regulating the manner in which appeals shall be taken to the district court; and for the manner in which the section of the organic act is to be carried into effect, we are referred to the act prescribing the mode of procedure in civil cases generally. Probate Prac. Act, sec. 324.

If the requirements of the Code of Civil Procedure

relative to perfecting appeals had been complied with, then the district court had acquired jurisdiction of the appeal.

The second and third grounds may be considered together. They are to the effect that the appeal was not taken pursuant to any law of this territory, and that there is no law authorizing an appeal from the order in question to the district court. We think the provision of the organic act already referred to would sufficiently sustain the appeal to the district court, but we are not without a law of the territory upon the subject. It is expressly provided that an appeal may be taken from the probate court to the district court from an order directing the sale or conveyance of real property. Code of Civ. Proc. sec. 432.

The order appealed from was one confirming the sale and directing the conveyance of certain property (see Transcript, p. 48), which the respondents, in their objections, alleged to be real property. Transcript, pp. 49–58.

It is true that the probate court had assumed to decide that it was not real property. Transcript, p. 45. But whether or not the property in question was real or personal, could only be determined by the district court upon a trial and hearing of the matters in controversy, and not upon a motion to dismiss the appeal. It will scarcely be contended that the probate court could take away the power of the district court to review its orders directing a conveyance of real property by simply finding as a fact that the property ordered to be sold was not real property.

Of the fourth and fifth grounds, that it did not appear that the respondents had any interest in the subject matter of the appeal or in the estate, or that they had any appealable interest, it need only be said that it was not necessary that the evidence of their interest should appear to entitle them to make their objections. In their

objections they alleged that they were interested as cred-
itors; they had done more than that; they had filed
affidavits in support of their objections, showing the
character of their claims (Transcript, pp. 59–62); and so
far as the respondent Warner is concerned, the records
of the case upon which the appellant's motion was based
showed all the time that he had a claim against the estate
which had been presented and allowed. That they were
in fact parties in interest could, if necessary, be proven
upon the trial of the appeal, but they could not be de-
prived of an opportunity to show that they were inter-
ested, by a motion to dismiss their appeal before hearing.

The sixth ground of appellant's motion is based upon
the alleged insufficiency of the undertaking on appeal to
the district court. Transcript, p. 69. The condition of
the undertaking is that the parties appealing will pay all
damages and costs which may be awarded against them
on the appeal or on a dismissal thereof, and so far is in
full compliance with the law making provision for an
undertaking on appeal in such cases. Code of Civil Proc.
secs. 410–418.

The rule that the condition of the undertaking shall
be that the appellant shall prosecute his appeal with
effect, and that it shall be for a sum double the value
of the property in controversy, does not apply to an ap-
peal from an order of the probate court of the charac-
ter of this one in question. Code of Civ. Proc. secs.
432, 435, 438.

The seventh ground of appellant was that there were
no sworn pleadings or verified statement of facts filed by
respondents as the ground for resisting the confirmation
of the sale of the property of the estate. To this it need
only be said that any person *interested* in the estate had
a right to make objection to the confirmation of the sale,
and the only requirement of the statute to entitle him
to be heard thereon was that he should file his objections
in writing. Probate Prac. Act, sec. 202.

The respondents' objections were mostly based upon matters appearing, or rather not appearing, but which they consider should appear of record in the probate court, relative to the estate, and so far as Broadwater, Hubbell & Co. were concerned, they filed affidavits showing that they were interested, and that they had a right to be heard in support of their objections.

We do not think it necessary to consider further the several grounds of appellant's motion in the district court to dismiss the appeal from the probate court. There can be no doubt that the respondents were entitled to be heard in the district court on their objections to the confirmation of the sale of the property, which afforded the only means of satisfying, even in part, their several claims, and that the decision of the district court, denying the motion to dismiss the appeal, was right.

2. The appellant's second specification of error, that the district court erred in overruling the motion of the appellant to dismiss the appeal from the order of the probate court, on the ground that the order appealed from was one confirming a sale of personal property, and the district court had not acquired jurisdiction, has been fully considered in what has been said in reference to the motion which has before been referred to. Whether or not it was an appeal from an order confirming a sale of personal property could not be determined upon a motion to dismiss the appeal. But even admitting that it was personal property, to the confirmation of the sale of which the respondents were objecting, still the probate court had found as a fact that a part of the property, at least, was partnership property, which deceased owned in common with one Riley, his surviving partner. Transcript, p. 45.

If that was the case, it would appear that Riley, and not the appellant, was the proper party to make the sale, and that the sale would require an order of confirmation. Probate Prac. Act, secs. 178, 299.

3. The third exception of the appellant is to the effect that the court below erred in refusing to strike the objections of all the respondents from the files; and the fourth, that it was an error for the court to refuse to strike from the objections the names of several parties composing the firm of Broadwater, Hubbell & Co., on the ground that it was not shown that the respondents were parties in interest. Transcript, p. —. That these exceptions cannot be sustained; we think has been sufficiently shown in what has already been said in reference to the motion of the appellant to dismiss the appeal from the probate court. That they are utterly groundless is apparent, when it is considered that no proceeding had in the probate court would bar any creditor of his claims, which will be considered hereafter.

4. Leaving the others, which can be more conveniently considered afterwards, we will consider the thirty-first and last specification of error. It is that the district court erred in its judgment and decree from which this appeal is taken. Transcript, pp. 163, 164.

The most hasty examination of the record in this case cannot fail to show that the proceedings had in the probate court were so entirely at variance with the plain requirements of the law governing the administration of the estates, that no court on appeal should for a moment tolerate or affirm them. There can be no doubt that the statutes in that regard contemplate, require, and were intended to secure, a careful, efficient and regular administration and disposition of the estates of deceased persons in the probate courts. Each act to be done in the course of the administration of an estate is carefully provided for, and public record required to be made of it. The probate court has been constituted a court of record, and it is expressly required that " all orders and decrees of the court or judge *must* be entered at length in the minute book of the court, and upon the close of each term the judge *must* sign the minutes." Probate Prac. Act. sec. 314.

There can be no doubt that this section of the statute is mandatory, and that a compliance with it cannot be dispensed with. It may be admitted, as suggested by the appellant in his brief, that if such record had once existed and had been lost or destroyed, its contents could be shown by secondary evidence; but there is nothing in this case which in any way tends to show that the orders and decrees, on the absence of which the respondents based their objections (Transcript, p. ———), had ever been made by the probate court or judge.

The evidence adduced on the hearing in the court below shows conclusively that the probate court had never acquired jurisdiction of the matters on which it assumed to act. No docket had been kept by the judge of that court in all the earlier stages of the administration of this estate, or signed by him; nor is it anywhere pretended that the orders which should have been made at that time were ever entered and signed by the probate judge in a docket or elsewhere. He never did such a thing. The record in this case is conclusive upon those points.

The testimony of the witness John McBride, the probate judge at the time of the hearing in the court below, shows that there was no record of any proceedings in relation to the estate other than those which are referred to and set forth in the transcript in this case. Transcript, p. 21.

The respondents, in their objections which were made in the probate court, set forth their grounds and reasons for resisting the confirmation of the sale (Trans. pp. 49–62), and it is respectfully submitted that if the several grounds alleged had any foundation in fact, there was enough, and more than enough, to justify the order of the court below, from which the appeal is taken. That those objections had such foundation became so apparent on the hearing had in that court, that the case did not even proceed to the point of allowing the respondents to produce evidence in support of their objections. It was

apparent that not the first foundation had been laid for a legal administration of Brooks' estate; that the probate court had never taken the steps requisite and necessary to give it the power to effectually dispose of his property.

Article 4 of chapter 3 of the Probate Practice Act provides the manner in which administrators shall be appointed. It is there provided that the applicant for letters " must state the names, ages and residence of the heirs of the decedent," when known to him, in his petition (sec. 61); that "letters of administration may be granted at a regular term of court or at a special term appointed by the judge for the hearing of the application " (sec. 62); that "when a petition praying for letters of administration is filed the clerk *must* give notice thereof at least ten days before the hearing" (sec. 63); that "on the hearing, it being first proved that notice has been given, the court *must* hear the allegations and proofs of the parties, and order the issuing of letters of administration to the party best entitled thereto " (sec. 65); and that "an entry in the minutes of the court that the required proof was made and notice given shall be evidence of the fact of such notice." Sec. 66.

The second, third, fourth, fifth and sixth of the respondents' grounds of objection are directed to the fact that none of these plain requirements of the law had been complied with. Transcript, pp. 51, 52.

The petition nowhere states the names, the ages or residence of the heirs of Brooks, or that the same were not known to the petitioner. It nowhere appears that letters were granted to the appellant at a regular term of the probate court, nor does it appear that any special term was ever appointed for the hearing of his application. It nowhere appears that the notice required by section 63, of the hearing of the application, was given, unless the affidavit of Carmichael, made after he had been suspended from the office of probate judge, furnishes evidence of that fact. Transcript, pp. 123, 124.

But we submit that that affidavit is not evidence that such notice was given. Section 66, before referred to, requires that it should be shown by an entry in the minutes of the court, and we submit that such entry in the minutes cannot be dispensed with. The court could not in any case acquire jurisdiction to order the issuing of letters of administration unless the required notice had been given, and the right to property acquired through the administration of estates would be dangerously insecure if the facts which give the probate court jurisdiction to confer the power of administration should be allowed to stand upon any but the record evidence, which the statute plainly contemplates. There is nothing, except the affidavit just referred to, which in any way tends to show that any hearing was had in the probate court on the appellant's petition, as required by sec. 65. If any order or decree had been made directing the issuing of letters of administration to appellant, it might perhaps be assumed that such hearing had been had; but all the evidence tends to show no such order was ever entered. An attempt was made to show that there had been such an order, and that it had been lost, but the probate judge, McBride, who was the only witness who testified on that point, says positively that he knows nothing about the existence of any such order. Transcript, p. 20.

It was shown on the hearing in the court below that no such order then existed, and there was no evidence that it had ever been made. There was, then, no foundation upon which the action of the appellant, as administrator of the estate, could be supported. The issuing of letters to him by an *ex officio* clerk of the probate court, and his taking the oath and executing a bond, could not constitute him an administrator and give him the power to take possession and dispose of Brooks' estate in the absence of an adjudication and orders of the probate court to that end. The appellant could no more acquire a right to hold

and dispose of the property belonging to the estate of Brooks, without an adjudication upon his right so to do, than he could in Brooks' life-time have acquired a right to hold and dispose of the same property in the absence of an adjudication by, and process of, a competent court. The order or decree for the appointment of an administrator, the qualification of the person appointed, and the issuing of letters to him, are all necessary proceedings to invest him with the office of administrator of an estate. No one of these can be dispensed with. *Estate of Hamilton*, 34 Cal. 464; *Estate of Frey*, 52 Cal. 658.

The ninth of the objections of the respondents is to the effect that the appellant had not qualified as administrator of the estate of Brooks, in that the sureties upon his bond had not qualified as required by law, and that the bond had not been approved by the probate judge. Transcript, pp. 53, 111, 113.

Until the sureties upon his bond had justified, and it had been approved by the probate judge, the right to administer upon the estate could not vest in the appellant. Probate Prac. Act. sec. 80; *Estate of Hamilton, supra.* But even if there had been an order or decree of the probate court appointing the appellant administrator, and he had undertaken to qualify, still it is submitted that such proceedings would have been void and ineffectual for any purpose. The petition of the appellant bears date January 7, 1879, and he attempted to qualify January 18, 1879, as shown by the date of his oath and bond. Transcript, pp. 109, 110.

There could have been no court in Custer county, at this time, competent to make an order or decree granting administration upon Brooks' estate. And respondents' first objection was directed to that point. Transcript, p. 51. Under the statutes then in force, the territory which now constitutes Custer county was, for judicial purposes, attached to the county of Gallatin. The probate court

of the latter county was the only one which could have acquired jurisdiction to administer upon Brooks' estate. It was not until February 8, 1879, that there was any law authorizing the holding of courts within the county of Custer. Laws of Montana, 1879, p. 100.

For any one to assume to act as probate judge of Custer county, or hold a probate court there, was contrary to the express provisions of the statutes of the territory. Cod. Statutes Montana, pp. 432–585; Laws Montana, 1877, p. 425.

Any order by a probate court within Custer county appointing the appellant administrator of Brooks' estate at the time mentioned, must have been void, as being in contravention of the statutes referred to. In support of this, we respectfully refer the court to the appellant's brief in the case of *McCormick* v. *Kelly and Hubbell*, submitted at this term. The administration of this estate was then without a valid inception, and all the subsequent acts of the appellant as administrator without foundation, unless it was validated and made effectual by the act which took effect January 21, 1879. Laws Montana, 1879, p. 117.

But it is well settled that a void order or decree, and the acts done under it, cannot be validated by subsequent legislation. Retroactive laws cannot validate void judgments and decrees. A decree made by one assuming to act as probate judge in Custer county at that time could not serve as a basis to give the appellant the right to dispose of this estate. *Pryor* v. *Downy*, 50 Cal. 388–400. The tenth and eleventh of respondents' grounds of objection (Transcript, p. 53) were well taken.

The order purporting to be an order for the appointment of appraiser does not furnish any evidence of its ever having been made at any time. It is simply a blank order, without date or signature of court or judge. Transcript, p. 114.

Nor does the inventory on file contain any reference to

the debts due the decedent, or of any partnership property in which he had an interest (Transcript, p. 103), although the very property, to the confirmation of the sale of which the respondents object, was afterwards found by the probate court to be partnership property. See Order of Probate Court, Transcript, p. 45. These are all plain requirements of the law, with which a compliance is necessary before an administrator can complete a sale of real property belonging to the estate. Probate Prac. Act, secs. 118, 120, 187, 199.

The notice to creditors of the deceased to present their claims to the appellant with the necessary vouchers was not printed in a newspaper published in Custer county. Yet there does not appear to have been any order of the probate court or judge directing the publication of such notice elsewhere. There was no order of that court designating any newspaper in which the notice should be published; still less the number of times of its publication. There is no evidence that it was ever published at all. See Transcript, p. 105.

There was no order or decree of the probate court showing that notice to creditors had been given, and the respondents allege that, by reason of the failure of the court to make such order, they never had any notice to present their claims. Transcript, p. 54.

It will scarcely be contended that the claims of the respondents could be barred, and a sale and distribution of the property of the estate be had, before these things had been done. The orders referred to *must* be made and the notice *must* be given. Probate Prac. Act, secs. 147–149.

Finally, it is objected by the respondents that the appellant, in dealing with the property of Brooks' estate, had treated that which is real estate as personal property. The affidavits attached to the respondents' objections sufficiently indicate the character of the property in question. Transcript, pp. 57–66.

The bid of the purchasers of that property shows that

they considered that they were buying real estate and not personal property. Transcript, p. 96. There is nothing in the record from which this court can find that the property in question is personal property. The record shows that it was a building which was permanently attached to the lot referred to in the record. That being the case, it must be assumed that it was realty until the contrary is shown. The court cannot take judicial notice, as suggested by the appellant in his brief, that the land is a part of the public domain, which has been granted by congress to the Northern Pacific Railroad Company, and that an application to enter it under the town site laws had been refused. The fact that the land is embraced within the limits of a grant must, if such fact exists, be proven as any other fact, and the records of the general land office must be proven as other records.

The definition of the term "real estate," furnished by the statute referred to by appellant (Cod. Stats. Montana, 1872, p. 389, sec. 1, clause 5), is, we submit, sufficiently comprehensive to include the property in controversy, even if its *status* could, as it cannot, be found to be as suggested by the appellant's brief. It is there enacted that the words "real estate" shall be construed to include lands, tenements and hereditaments, and all rights thereto and all interests therein. The petition of appellant for an order to sell describes the property as "a certain building and tenement, with the fixtures thereto attached." Transcript, p. 118.

If anything further was wanting to show that the property was real estate, an opportunity should have been given the respondents to show it on the hearing in the district court. As it was, the decision appealed from was made before allowing them that opportunity. It is not necessary to further call attention to defects in the proceedings by which a sale and transfer of this property was attempted. The requirements of the statutes for a sale of real property are so essentially different from

those which the probate court sought to follow in its attempt to dispose of what it was pleased to call personal property, that the proceedings had for that purpose could not be held to be of any effect, even if the proceedings in the earlier stages of the administration of this estate had been in conformity with the requirements of law. The point is raised by appellant in his brief, that the court below had no jurisdiction to order, among other things, that the administrator should qualify and thereafter administer the estate, giving notice and allowing creditors to present their claims. Transcript, p. 163.

The order of the probate court appealed from was one confirming a sale of property, and directing conveyance to be made; and we submit that, if the district court found that the sale was invalid for the reason, among others, that these things had not been done, it had a right, in the exercise of its supervisory powers over the probate court, to direct that they should be done. If it was necessary that these things should be done in the probate court before a valid sale of the property of the estate could be made, the probate court would of necessity have to see to it that the law in that regard was complied with, whether the district court so ordered or not. But even if it were admitted that the district court exceeded its jurisdiction, that would not necessitate a reversal of its order; the order could be so modified as to simply vacate and set aside the order of the probate court appealed from. Code Civ. Proc. sec. 428.

5. It is submitted that the ruling of the court below referred to in the fifth and sixth assignments of error was correct. The best evidence as to who had acted as administrator would be the records of the probate court. The fact that appellant had so acted, in the absence of record evidence that he had been appointed and qualified, would amount to nothing. The question referred to in the sixth assignment of error was too general; it does not refer to any records which are shown to have any

bearing on this case. But if the court below erred in the rejection of evidence, advantage should have been taken of it by a motion for new trial. No motion for that purpose was made, and the question as to whether the court erred cannot now be raised on appeal. The same may be said of the fifteenth and sixteenth specifications. Transcript, p. 32.

Besides, the fact that the claim of one of the respondents, Warner, has been allowed (see Transcript, p. 140) cannot affect his right to object to the invalidity of the proceedings in the probate court; and if no proceedings have been had to bar the claims of creditors, the respondent Miles still has an interest in the estate.

6. The twenty-eighth, twenty-ninth and thirtieth specifications of error are directed to the alleged failure of the court below to make and file findings of fact and conclusions of law, as requested. The record shows that such a request was not made until some time after the hearing and submission of the case, in fact not until after the order appealed from had been made. Code Civil Proc. sec. 270.

It is respectfully submitted that the order of the district court should be affirmed.

WADE, C. J. This is an appeal from a judgment of the district court setting aside an order of the probate court of Custer county, approving the accounts of Thomas Richards as administrator of the estate of James R. Brooks, deceased, and directing that the administrator, within thirty days from the date of the rendition of the judgment, file with the probate judge a good and sufficient bond as administrator, and before so doing that he retain in possession the money belonging to the estate, and thereupon qualify as administrator according to law, and proceed legally to the administration of the estate, supplying all omissions in the probate record, and giving notice to all persons to file their claims against the es-

tate; and that upon failure to file such bond, the letters. of administration will cease, and the said Richards be removed from his official position; and in case of such failure, that he pay into the hands of the clerk of the court all moneys which have come into his possession as such administrator, and that the cause be returned to the probate judge for proceedings in accordance with this judgment.

1. There was no motion for a new trial, and hence we cannot look into or review the evidence contained in the record. We have frequently decided that questions of fact cannot be examined if there is no appeal from an order granting or refusing a motion for a new trial. *Alport* v. *Kelley*, 2 Mont. 343; *Chumasero* v. *Viall*, 3 Mont. 376; *Largey* v. *Sedman*, 3 Mont. 472.

The only question properly before us for consideration, therefore, is whether the judgment is such an one as the district court had jurisdiction to render. Under sec. 432 of the code, appeals from the probate court to the district court are authorized from orders made on the settlement of administrators. An order approving or disapproving the account of an administrator is in the nature of a judgment, and an appeal from such an order or judgment brings the whole case before the district court for review and adjudication. It may affirm or set aside such an order. It hears the case upon the proofs, and renders judgment as in other cases. The party against whom the judgment is rendered may appeal from the judgment, or he may make a motion for a new trial, and from the order granting or refusing the same an appeal lies to this court, which brings with it the evidence for review.

2. In the absence of any testimony that we can take into consideration, it must be conclusively presumed that the judgment was rendered upon competent and sufficient proofs. And it is fairly to be inferred from the judgment that the testimony established: First. That there

was a properly constituted probate court of Custer county, from which an appeal to the district court might have been taken. Second. That the records of said probate court were defective in failing properly to show the appointment of an administrator upon the estate of deceased. Third. That said administrator had failed to qualify as provided by law. Fourth. That he had failed to give the necessary bond; and fifth. That he had not given notice to the creditors of the estate as required by law.

And so it seems that the administrator appeared in the district court, with no letters of administration showing his authority, and with no bond or oath showing his qualification as administrator, with no proof of notice showing that he had notified the creditors of the deceased to present their claims against the estate, but with money in his hands belonging to the estate, and praying that his accounts as administrator be approved, and that he be ordered to make distribution and be discharged from his trust.

Under such a state of facts, what had the court jurisdiction and authority to do in the premises? The case was in the district court. It had obtained jurisdiction over the subject matter and the parties. For the time being the probate court had lost its jurisdiction. After the appeal, it had no authority to change or modify its decree. The case had passed out of its jurisdiction. It had adjudged the administrator duly qualified and authorized. It had ordered him to make final distribution of the estate. This adjudication and order came before the district court for review. Looking at the judgment in that court, it must have found that the administrator had not been legally appointed and had not properly qualified. But he was in that court. He had moneys in his hands belonging to the estate. It was necessary that this money be protected for the benefit of those entitled to receive it. It was necessary that this protection be

afforded then and there.  The district courts of the terri-
tories are courts of general jurisdiction.  They are clothed
with chancery as well as common law powers, and hav-
ing acquired jurisdiction of a case for one purpose, they
may retain it for all purposes.  To have done no more
than to have reversed the order approving the accounts
of the administrator would still have left this money
unprotected.  No doubt the district court might have
ordered the probate court to cause the administrator to
give a bond, and what the district court had authority to
order the probate court to do in the premises, it might
well do itself.  The district court being the appellate
court of the probate court, and a court of general juris-
diction, it has the inherent power and authority to make
any order in a case properly before it that the probate
court might make in the same case.

It follows, therefore, that the judgment of the district
court did not exceed its jurisdiction, and the same is
affirmed with costs.

*Judgment affirmed.*